RECORD NO.

# 14-1441

In The

# United States Court of Appeals

### For The Second Circuit

### JEWISH PEOPLE FOR THE BETTERMENT OF WESTHAMPTON BEACH, ARNOLD SHEIFFER, ESTELLE LUBLINER,

*Plaintiffs – Appellants*,

**v.**

### THE VILLAGE OF WESTHAMPTON BEACH, EAST END ERUV ASSOCIATION, INCORPORATED, VERIZON NEW YORK INC., LONG ISLAND LIGHTING COMPANY, DBA LIPA,

*Defendants – Appellees*.

### ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK

───────────

### BRIEF OF APPELLEES VERIZON NEW YORK INC. AND LONG ISLAND LIGHTING COMPANY, DBA LIPA

───────────

Erica S. Weisgerber
Michael E. Wiles
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York  10022
(212) 909-6000

*Counsel for Appellee*
  *Verizon New York, Inc.*

Zachary Murdock
LAZER APTHEKER ROSELLA & YEDID PC
225 Old Country Road
Melville, New York  11747
(631) 761-0800

*Counsel for Appellee*
  *Long Island Lighting Company, Dba LIPA*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Appellee Verizon New York, Inc. states that it is an indirect wholly owned subsidiary of Verizon Communications Inc.

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Appellee Long Island Lighting Company d/b/a/ LIPA ("LIPA") states that it is a corporation organized and existing under and by virtue of the laws of the State of New York, and is a wholly owned subsidiary of, and is operated and controlled by, the Long Island Power Authority, a New York Public Authority and political subdivision of the State of New York.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT

TABLE OF CONTENTS .................................................................................. i

TABLE OF AUTHORITIES ......................................................................... iii

COUNTERSTATEMENT AS TO THIS COURT'S JURISDICTION .................... 1

COUNTERSTATEMENT OF THE ISSUES ............................................... 2

STATEMENT OF THE CASE ....................................................................... 4

    I.     Statement of Facts ............................................................... 4

    II.    The Proceedings Below ....................................................... 6

SUMMARY OF ARGUMENT .................................................................. 14

ARGUMENT ............................................................................................ 16

    I.     STANDARD OF REVIEW ...................................................... 16

    II.    THE APPEAL SHOULD BE DISMISSED AS PREMATURELY FILED ........... 18

    III.   JPOE LACKS STANDING TO ASSERT ESTABLISHMENT CLAUSE CLAIMS AGAINST VERIZON AND LIPA ................................................. 18

    IV.   THE DISTRICT COURT PROPERLY DISMISSED JPOE'S CLAIMS AGAINST VERIZON BECAUSE VERIZON IS NOT A GOVERNMENTAL ENTITY AND IS NOT SUBJECT TO THE ESTABLISHMENT CLAUSE ................................................. 25

    V.    THE JPOE COMPLAINT WAS PROPERLY DISMISSED BECAUSE ERUVIN ARE REASONABLE ACCOMMODATIONS AND DO NOT VIOLATE THE ESTABLISHMENT CLAUSE ............................................. 27

VI.    JPOE'S ESTABLISHMENT CLAUSE CLAIM AGAINST LIPA WAS PROPERLY DISMISSED ..........................................................................31

    A.    LIPA's Contract With The EEEA Implicates LIPA's Personal Property ....................................................................31

    B.    LIPA's Issuance Of Licenses For The Attachment Of Lechis Passes The Lemon Test ...................................................36

        1.    LIPA's Issuance Of A License To The EEEA Has A Secular Purpose – It Treats The EEEA Evenhandedly With Others..............................................38

        2.    LIPA's Issuance Of A License To The EEEA Neither Advances Nor Inhibits Religion Because It Merely Affords A Religious Group The Same Opportunity To Use LIPA's Utility Poles As Others..............................................................................40

        3.    LIPA's Issuance Of A License To The EEEA Would Not Foster Excessive Entanglement With Religion Because LIPA Would Merely Issue The License And Ensure The EEEA Adhered To Its Terms ..........................................................................45

    C.    If LIPA Refused To Allow The EEEA To Attach Lechis To LIPA's Poles, LIPA Would Risk Violating The Free Exercise Clause ......................................................................47

CONCLUSION ......................................................................................49

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE WITH RULE 32(A) CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Abington Sch. Dist. v. Schempp*,
374 U.S. 203 (1963)...................................................................19

*ACLU v. City of Long Branch*,
670 F. Supp. 1293 (D.N.J. 1987)..........................................29, 30

*Agostini v. Felton*,
521 U.S. 203 (1997)..............................................................37, 45

*Allen v. Wright*,
468 U.S. 737 (1984)...................................................................18

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*,
671 F.3d 140 (2d Cir. 2011) .......................................................16

*Arizona Christian School Tuition Organization v. Winn*,
131 S. Ct. 1436 (2011)................................................................20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................................................................17

*Bank of N.Y. v. First Millennium, Inc.*,
607 F.3d 905 (2d Cir. 2010) .......................................................17

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................................................................17

*Burch v. Pioneer Credit Recovery, Inc.*,
551 F.3d 122 (2d Cir. 2008) .......................................................17

*Capitol Square Review & Advisory Bd. v. Pinette*,
515 U.S. 753 (1995)..............................................................40, 41

*Church of the Lukimi Babalu Aye, Inc. v. Hialeah*,
    508 U.S. 520 (1993)...............................................................47

*Commack Self-Service Kosher Meats, Inc. v. Hooker*,
    680 F.3d 194 (2d Cir. 2012) ....................................17, 30, 37, 44

*Cooper v. United States Postal Service*,
    577 F.3d 479 (2d Cir. 2009) ...............................................22, 23

*Corp. of Presiding Bishop of Church of
Jesus Christ of Latter-day Saints v. Amos*,
    483 U.S. 327 (1987).............................................................29, 30

*DeStafano v. Emergency Hous. Grp., Inc.*,
    247 F.3d 397 (2d Cir. 2001) .....................................................37

*East End Eruv Assoc. v. Vill. of Westhampton Beach*,
    No. 11-cv-213 (E.D.N.Y. filed Jan. 11, 2011) ....................*passim*

*Flast v. Cohen*,
    392 U.S. 83 (1968).....................................................................19

*Freedom from Religion Found., Inc. v. Obama*,
    641 F.3d 803 (7th Cir. 2011) ....................................................24

*Good News Club v. Milford Central Sch.*,
    533 U.S. 98 (2001)..............................................................*passim*

*Greene v. United States*,
    13 F.3d 577 (2d Cir. 1994) ........................................................33

*Hobbie v. Unemployment Appeals Comm'n of Fla.*,
    480 U.S. 136 (1987)...................................................................29

*Holcomb v. Lykens*,
    337 F.3d 217 (2d Cir. 2003) ......................................................17

*Incantalupo v. Lawrence Union Free Sch. Dist. No. 15*,
    380 F. App'x 59 (2d Cir. 2010)..................................................39

*Jackson v. Metro. Edison Co.*,
    419 U.S. 345 (1974)..............................................................................27

*Jewish People for the Betterment of Westhampton Beach v.*
*Vill. of Westhampton Beach*,
    No. 12-cv-03760 (LDW) (AKT) (E.D.N.Y. filed July 30, 2012) .........*passim*

*Kiobel v. Royal Dutch Petroleum*,
    621 F.3d 111 (2d Cir. 2010) ...........................................................16

*Lamont v. Woods*,
    948 F.2d 825 (2d Cir. 1991) ...........................................................19

*Lemon v. Kurtzman*,
    403 U.S. 602 (1971)........................................................................*passim*

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992).........................................................................19

*Lynch v. Donnelly*,
    465 U.S. 668 (1984)............................................................28, 31, 40

*M.F. v. N.Y. Executive Dep't Div. of Parole*,
    640 F.3d 491 (2d Cir. 2011) ...........................................................17

*McCreary County v. ACLU*,
    545 U.S. 844 (2005).........................................................................38

*Merck Eprova AG v. Gnosis S.p.A.*,
    2014 U.S. App. LEXIS 14514 (2d Cir. July 29, 2014) ..................33

*Morrison v. Nat'l Australia Bank Ltd.*,
    547 F.3d 167 (2d Cir. 2008) ...........................................................16

*N.Y. Tel. Co. v. Town of North Hempstead*,
    41 N.Y.2d 691 (1977)......................................................................27

*New York Tel. Co. v. North Hempstead*,
    86 Misc. 2d 487 (N.Y. Sup. Ct. Nassau Co. 1975) ........................27

*Peck ex rel. Peck v. Baldwinsville Central Sch. Dist.*,
  426 F.3d 617 (2d Cir. 2005) ..........................................................................25

*Russell v. Town of Mamaroneck*,
  440 F. Supp. 607 (S.D.N.Y. 1977) ................................................................25

*Sierra Club v. Morton*,
  405 U.S. 727 (1972)........................................................................................22

*Skoros v. City of New York*,
  437 F.3d 1 (2d Cir. 2006) ......................................................................40, 45

*Smith v. Cmty. Bd. No. 14*,
  128 Misc. 2d 944 (N.Y. Sup. Ct., Queens Cnty. 1985).........................*passim*

*Sullivan v. Syracuse Housing Authority*,
  962 F.2d 1101 (2d Cir. 1992) ......................................................................22

*Taylor v. Consol. Edison Co. of N.Y., Inc.*,
  552 F.2d 39 (2d Cir. 1977) ..........................................................................27

*Tenafly Eruv Ass'n v. Borough of Tenafly*,
  309 F.3d 144 (3d Cir. 2002) .....................................................29, 44, 47, 48

*Valley Forge Christian Coll. v.*
*Ams. United for the Separation of Church & State, Inc.*,
  454 U.S. 464 (1982)..............................................................18, 19, 20, 24

*Verizon New York Inc. v.*
*Jewish People for the Betterment of Westhampton Beach*,
  Nos. 13–1401, 13–1417, 2014 WL 803311 (2d Cir. Mar. 3, 2014)..............12

*Verizon New York, Inc. v. Vill. of Westhampton Beach*,
  No. 11-civ-252 (E.D.N.Y. filed Jan. 18, 2011) .................................. *passim*

*Verizon New York, Inc. v. Vill. of Westhampton Beach*,
  No. 11-cv-252, 2014 WL 2711846 (E.D.N.Y. June 16, 2014) ..............13, 35

*Walz v. Tax Comm'n*,
  397 U.S. 664 (1970)................................................................................25, 28

## CONSTITUTIONAL PROVISIONS

U.S. Const. amend. I .................................................................37

## STATUTES

28 U.S.C. § 1746 ......................................................................5

41 U.S.C. §§ 2000cc *et seq.* .....................................................7

42 U.S.C. § 1983 .....................................................................32

N.Y. Pub. Auth. Law § 1020-f ...............................................34

N.Y. Pub. Auth. Law § 1020-g ...............................................35

N.Y. Pub. Auth. Law § 1020-i ................................................33

N.Y. Pub. Auth. Law, Article 5, Title 1-A ..............................34

## RULES

Fed. R. Civ. P. 12(b)(1).........................................................16

Fed. R. Civ. P. 12(b)(6)....................................................17, 37

Fed. R. Civ. P. 12(c)..............................................................17

## OTHER AUTHORITY

Laurence H. Tribe, American Constitutional Law § 14-4 ........28

Appellees Verizon New York, Inc. ("Verizon") and Long Island Lighting Company d/b/a LIPA ("LIPA) (together the "Utilities" or "Appellees"), submit this brief in response to the appeal (the "Appeal") by Appellants Jewish People for the Betterment of Westhampton Beach a/k/a JPOE, Arnold Sheiffer, and Estelle Lubliner (collectively "Appellants" or "JPOE") from (i) the February 4, 2013 Order of the Honorable Judge Leonard Wexler (the "Verizon Order"), granting the motion to dismiss by Defendant-Appellee Verizon, and (ii) the May 23, 2013 order by Judge Wexler (the "LIPA Order"), granting Defendant-Appellee LIPA's motion for judgment on the pleadings. The Utilities also join in the arguments in the separate brief submitted by Appellees East End Eruv Association, Inc. (the "EEEA").[1]

## COUNTERSTATEMENT AS TO THIS COURT'S JURISDICTION

As explained in the EEEA's brief, there has been no final judgment entered in the proceedings below. JPOE voluntarily dismissed its claims against the one remaining party (Westhampton Beach) to the action below in order to pursue this Appeal, but at the same time retained its right to reinstate those claims against Westhampton Beach. As a result, the claims against one party (Westhampton

---

[1] Verizon and LIPA join in the legal arguments advanced in the EEEA's brief but take no position on the religious beliefs or motives discussed therein.

Beach) were not finally resolved, and this Appeal should be dismissed as premature.

## COUNTERSTATEMENT OF THE ISSUES

Verizon and LIPA have each entered into agreements with the EEEA to permit the attachment of thin wooden or plastic strips ("lechis") to Verizon's and LIPA's utility poles in order to create an eruv in the Village of Westhampton Beach ("Westhampton Beach"), the Village of Quogue ("Quogue") and the Town of Southampton ("Southampton") (collectively the "Municipalities"). Under Jewish law, an eruv is a largely invisible demarcation of an area within which observant Jewish people may push or carry objects and engage in other activities on the Sabbath that would otherwise be barred. JPOE filed this lawsuit in July 2012 seeking to assert Establishment Clause claims against the EEEA, Verizon, LIPA, and Westhampton Beach based on purported psychological distress that JPOE and its members would face if the eruv were to be completed. On February 4, 2013, the U.S. District Court for the Eastern District of New York (the "District Court") dismissed JPOE's claims against Verizon, and on May 21, 2013, the District Court dismissed JPOE's claims against LIPA. The issues raised on appeal are:

1.  Whether this Court lacks proper jurisdiction over the Appeal where JPOE voluntarily dismissed its claims against the one remaining party (Westhampton Beach) to this action in the District Court without prejudice.

2.  Whether the District Court's decision dismissing JPOE's Complaint should be affirmed on the ground that JPOE's arguments that it will suffer psychological harm as a result of an eruv being established are not sufficient to confer standing to assert Establishment Clause claims.

3.  Whether the District Court's decision dismissing JPOE's Complaint against Verizon should be affirmed because Verizon is not a governmental entity and its actions are not subject to the Establishment Clause.

4.  Whether the District Court's decision dismissing JPOE's Complaint should be affirmed on the ground that eruvin are reasonable accommodations and are not violations of the Establishment Clause.

5.  Whether the District Court's decision dismissing JPOE's Complaint against LIPA should be affirmed on the grounds that LIPA's contract with the EEEA implicates LIPA's personal property only, LIPA's issuance of licenses for the attachment of lechis satisfies the *Lemon* test, and if LIPA refused to allow the EEEA to attach lechis to LIPA's poles, LIPA would risk violating the Free Exercise Clause.

3

## STATEMENT OF THE CASE

**I.    Statement of Facts**

Verizon is a private telecommunications corporation organized under the laws of the State of New York.  JPOE Compl. ¶ 13 (A-12).  LIPA is a corporation organized and existing under and by virtue of the laws of the State of New York, and is a wholly owned subsidiary of, and is operated and controlled by, the Long Island Power Authority, a New York Public Authority and political subdivision of the State of New York.  JPOE Compl. ¶ 12 (A-12); LIPA Answer ¶ 12 (A-27).  The EEEA is a private organization whose members wish to establish an eruv in eastern Long Island.  JPOE Compl. ¶ 11 (A-12).

Verizon and LIPA have each entered into agreements with the EEEA to permit the attachment of lechis to Verizon's and LIPA's utility poles in order to create an eruv in the Municipalities.  JPOE Compl. ¶¶ 41, 42 (A-18).  Under Jewish law, an eruv is a largely invisible unbroken demarcation of an area created by, among other things, existing natural structures and boundaries, overhead wires, and lechis, which are strips of wood or plastic attached to the sides of certain poles.  JPOE Compl. ¶ 1 (A-9–10) (noting the "nearly invisible nature of the lechis and the other components of the eruv" (emphasis omitted)).  The lechis proposed to be used in the eruv at issue are 5/8" half-round strips of PVC that would measure no more than ten to fifteen feet in length and would be affixed vertically to the poles.

4

*See* Am. Compl. ¶ 25, *East End Eruv Assoc. v. Vill. of Westhampton Beach*, No. 11-cv-213 (E.D.N.Y. filed Feb. 3, 2012) ("EEEA Am. Compl.") (A-202-18, A-223).  Each lechi could be painted so that it would blend in with the pole to which it is attached.  *Id.*

EEEA members and other observant Jewish residents of Westhampton Beach and neighboring towns and villages believe that they cannot carry or push objects in the public domain on the Sabbath and Yom Kippur without an eruv. JPOE Compl. ¶ 24 (A-14); EEEA Am. Compl. ¶ 3 (A-220).  Consequently, without an eruv, observant Jewish residents who are in need of wheelchairs cannot attend Sabbath services or go to a friend's house on the Sabbath without violating Jewish law.  Nor can observant Jewish residents carry items such as prayer books, prayer shawls, or books, or push strollers on the Sabbath and Yom Kippur outside of their homes.  *See* JPOE Compl. ¶ 24 (A-14); *see also* Decl. of Alan Schechter Pursuant to 28 U.S.C. § 1746 in Support of Plaintiffs' Motion for Partial Summary Judgment, or, in the Alternative, for a Preliminary Injunction Against Westhampton Beach ¶ 5 (Aug. 7, 2012) (A-259); Declaration of Morris Tuchman Pursuant to 28 U.S.C. § 1746 in Support of Plaintiffs' Motion for Partial Summary Judgment or, in the Alternative, for a Preliminary Injunction Against Westhampton Beach ¶ 10 (Aug. 7, 2012) (A-265).

After Verizon and LIPA entered into their contracts with the EEEA, but prior to the attachment of lechis, representatives of the Municipalities notified Verizon and LIPA that the attachment of lechis to utility poles was either not permitted at all and/or required the prior approval of the Municipalities. EEEA Am. Compl. ¶ 4 (A-220); Compl. ¶ 2, *Verizon New York, Inc. v. Vill. of Westhampton Beach*, No. 11-civ-252 (E.D.N.Y. filed Jan. 18, 2011), ECF No. 1 ("Verizon Compl."). Certain Municipalities also threatened to impose fines and/or to take other legal action against Verizon and LIPA if they permitted the installation of lechis without municipal consent. Verizon Compl. ¶¶ 2, 4. At the same time, the EEEA contended that no rules or ordinances in the Municipalities prevented the installation of lechis, and threatened legal action against Verizon and LIPA to enforce its contracts. *Id.* ¶ 3.

No Municipality has been asked to provide any assistance or affirmative action with respect to the contracts between the Utilities and the EEEA or with respect to the attachment of lechis to the Utilities' poles. The only actions taken by any Municipality with respect to the attachment of lechis have been efforts to prevent the attachments from occurring.

## II. The Proceedings Below

The EEEA filed an action against the Municipalities on January 13, 2011, *East End Eruv Assoc. v. Vill. of Westhampton Beach*, No. 11-cv-213 (E.D.N.Y.

6

filed Jan. 11, 2011) (the "*EEEA* Action"), asserting causes of action for violations of the Free Exercise Clause of the First Amendment, the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 41 U.S.C. § 2000cc *et seq.*, and tortious interference with contract. *See* EEEA Am. Compl. (A-219–57).

The Utilities filed a separate action against the Municipalities, *Verizon New York, Inc. v. Village of Westhampton Beach*, No. 11-cv-252 (E.D.N.Y. filed Jan. 18, 2011) (the "*Verizon* Action") on January 18, 2011. *See* Verizon Compl. The Utilities seek a clarification of their rights and resolution of the various issues raised by the EEEA in the *EEEA* Action, because otherwise "Verizon New York and LIPA face potential legal liability, either from [the Municipalities] (which have threatened fines or other legal action in the event that Verizon New York and LIPA permit the installation of lechis) or from the EEEA (which has contractual rights to install the lechis and has threatened legal action)." Verizon Compl. ¶ 47.

On or around March 16, 2012, more than one year after the *Verizon* Action was filed (and after a prior failed attempt to intervene in the *EEEA* Action), JPOE served a motion to intervene in the *Verizon* Action, along with a Proposed Answer and Counterclaims asserting claims for relief predicated on the Establishment Clause. *See* JPOE Motion to Intervene & Decl. of Arnold Sheiffer, *Verizon New York, Inc. v. Village of Westhampton Beach*, No. 11-cv-252 (E.D.N.Y.), ECF Nos. 36, 36-1, 36-2 . Prior to a ruling on that motion, on July 30, 2012, JPOE filed the

7

instant complaint (the "JPOE Complaint" or "Complaint") in a separate civil action

against EEEA, Westhampton Beach, Verizon, and LIPA, seeking injunctive relief

prohibiting the creation of the proposed eruv, on the grounds that it would violate

the Establishment Clause.  *See* JPOE Compl., *Jewish People for the Betterment of*

*Westhampton Beach v. Vill. of Westhampton Beach*, No. 12-cv-03760 (LDW)

(AKT) (E.D.N.Y. filed July 30, 2012) (the "*JPOE* Action") (A-9).

In its Complaint, JPOE asserted that the "establishment of an eruv within the

Village of Westhampton Beach will constitute a violation of the Establishment

Clause" and "cause real and actual harm to the community and its residents."

JPOE Compl. ¶ 1.  (A-9–10).  JPOE claims that the eruv will be a:

> constant and ever-present symbol, message and reminder
> to the community at large, that the secular public spaces
> of the Village have been transformed for religious use
> and identity; to the non-Jewish residents, that the Village
> and LIPA have given preferred status to the Jewish
> religion as the only faith permitted to permanently affix
> religious symbols to utility poles within the Village . . . ;
> and to large portions of the Jewish community within the
> Village, that one particular form of Judaism has been
> preferred and endorsed by the Village over another.

*Id.*; JPOE Compl. ¶ 6 (A-11) ("JPOE and its members do not want to live in a

community where their government – i.e., the Village and LIPA itself – is

reasonably seen and understood by them as endorsing particular religious beliefs

and practices that they do not hold or which they affirmatively oppose."); JPOE

Compl. ¶ 31 (A-16–17) ("An eruv conveys, and the contemplated eruv in Westhampton Beach will convey, an equally specific and particularized communicative message to the community at large that the governmental authorities, the Village and LIPA, have selected one particular form of Judaism for special and preferential treatment over other religions as well as over secular interests in public spaces.").)

EEEA and Verizon filed motions to dismiss the *JPOE* Action, while LIPA filed an answer. *See* Verizon Motion to Dismiss (A-198); EEEA Motion to Dismiss (A-39); LIPA Answer (A-25). The motions to dismiss were fully briefed on December 21, 2012.

On February 4, 2013, the District Court denied JPOE's motions to intervene in the *EEEA* Action and the *Verizon* Action, and dismissed the *JPOE* Action as to EEEA and Verizon:

> [MR. SUGARMAN:] So we are awaiting the Court's decision on both the motions to intervene and also on the fully briefed motion to dismiss by the other side.
>
> THE COURT: Motion to intervene is denied.
>
> MR. SINNREICH: Both of them?
>
> THE COURT: Yes.
>
> . . .
>
> MR. SUGARMAN: We have a motion to dismiss the JPOE action against the other parties. It's been fully

briefed.  I don't think I need to take the time of the Court.
They just don't have standing—

THE COURT:  Sustained.  I'm dismissing it.  Dismissed.

MR. SINNREICH:   You are dismissing my action in
chief, your Honor?

THE COURT:  Yes.

MR. SINNREICH:  May I argue it or—

THE COURT:  No.  It's dismissed.

MR. SINNREICH:  Thank you, your Honor.

THE COURT:  You submitted enough paperwork.

MR. SINNREICH:  Your Honor, I will need an order that
I can obviously appeal from.

THE COURT:  Submit an order.

Feb. 4, 2013 Hr'g Tr. 35:7-36:9 (A-269, A-303, A-304).   The District Court

subsequently issued docket-entry orders memorializing these rulings.[2]  By letter

dated February 27, 2013, JPOE's counsel sent the District Court proposed orders

reflecting the District Court's denial of the intervenor motions in the *EEEA* Action

and  the  *Verizon*  Action.   On  March  21,  2013,  the  Court  so-ordered  JPOE's

---

[2] *See* Order re ECF No. 128, *East End Eruv Assoc. v. Vill. of Westhampton
Beach*, No. 11-cv-213 (E.D.N.Y. Feb. 4, 2013) ("The request to renew the
motion to intervene is granted, and, as stated at oral argument today, the motion
to intervene is denied."); Order re ECF No. 36, *Verizon New York, Inc. v. Vill.
of Westhampton Beach*, No. 11-cv-252 (E.D.N.Y. Feb. 4, 2013) ("denying [36]
Motion to Intervene, as stated at oral argument today"); Order re ECF Nos. 23,
24, *Jewish People for the Betterment of Westhampton Beach v. Vill. of
Westhampton Beach*, No. 12-cv-03760 (LDW) (AKT) (E.D.N.Y. Feb. 4, 2013)
("this action is dismissed as against defendants Verizon and EEEA") (A-6).

proposed denial order. *See* Order Denying Motion to Intervene, *Verizon New York,*

*Inc. v. Vill. of Westhampton Beach*, No. 11-cv-252 (E.D.N.Y. Mar. 21, 2013), ECF

No. 96.

LIPA filed a motion for judgment on the pleadings in the *JPOE* Action on

March 22, 2013, which JPOE opposed. LIPA's motion incorporated by reference

Verizon's arguments regarding standing and the Establishment Clause:

> In light of the Court's dismissal of Plaintiffs' claims as to
> Verizon and the EEEA, LIPA – a defendant that is
> largely similarly-situated – moves for judgment on the
> pleadings on several of the same bases that Verizon
> raised in its motion to dismiss – specifically, that
> Plaintiffs claims must fail here because Plaintiffs lack
> standing to bring their Establishment Clause claims and
> that eruvin are reasonable accommodations of a religious
> practice and, therefore, permissible under the
> Establishment Clause. *See* ECF No. 24-1 at 5-11. . . .
> LIPA incorporates those arguments here by reference.

LIPA Motion for Judgment on the Pleadings (A-312).

By Order dated May 21, 2013, the District Court granted LIPA's motion for

judgment on the pleadings on the basis of the arguments incorporated into LIPA's

papers, and dismissed JPOE's pending claims against LIPA:

> WHEREAS Defendant Long Island Lighting Company
> d/b/a LIPA ("LIPA"), moved this Court, by Motion dated
> March 22, 2013, for an order pursuant to Rule 12(c) of
> the Federal Rules of Civil Procedure granting LIPA
> judgment on the pleadings, and said Motion incorporated
> by reference certain arguments made by Defendant

11

Verizon New York Inc. in its Motion to Dismiss, ECF No. 24-1;

WHEREAS Plaintiffs submitted an opposition, which incorporated by reference the arguments set forth in its oppositions to the motions to dismiss by defendants Verizon New York Inc. and the East End Eruv Association, ECF Nos. 23-3 – 23-10 and 24-8 – 24-15; and

WHEREAS all parties agree that oral argument on the Motion is unnecessary;

it is Now **ORDERED** that LIPA's motion for judgment on the pleadings is granted and Plaintiffs' claims against LIPA are dismissed in their entirety.

LIPA Order (A-315).[3]

The fourth defendant in the JPOE Action, Westhampton Beach, never answered or moved to dismiss, nor did JPOE take any action to prosecute the case against Westhampton Beach in the 611 days that the case remained pending against Westhampton Beach. Instead, on April 2, 2014 – the day after this Court issued its Certified Order affirming the District Court's denial of JPOE's motions

---

[3] JPOE filed notices of appeal from the District Court's denial of its motions to intervene on April 15, 2013. *See* JPOE Notice of Appeal of Motion to Intervene, *Verizon New York, Inc. v. Vill. of Westhampton Beach*, No. 11-cv-252 (E.D.N.Y. Apr. 15, 2013), ECF No. 101. This Court issued a summary order affirming the denial of JPOE's motions to intervene on March 3, 2014. *See Verizon New York Inc. v. Jewish People for the Betterment of Westhampton Beach*, Nos. 13-1401, 13-1417, 2014 WL 803311, at *1 (2d Cir. Mar. 3, 2014). Notably, JPOE has yet to pay Verizon its taxed costs as ordered by the Clerk of this Court on April 1, 2014. *See Verizon New York, Inc. v. Vill. of Westhampton Beach*, No. 13-1417, (2d Cir. ), ECF No. 122. Verizon inquired about the status of payment on July 1, 2014, but JPOE's counsel has yet to respond.

to intervene in the *EEEA* Action and the *Verizon* Action – JPOE filed a stipulation of dismissal without prejudice as against Westhampton Beach. (A-317).[4] This Appeal immediately followed.

---

[4] In a recent ruling in the *Verizon* Action, the District Court concluded that "Westhampton Beach has not passed any ordinance or regulation which prohibits the attachment of lechis to the utility poles at issue here; therefore, nothing prohibits LIPA or Verizon from entering into contracts to facilitate the attachment of lechis to their utility poles in Westhampton Beach." *Verizon New York, Inc. v. Vill. of Westhampton Beach*, No. 11-cv-252, 2014 WL 2711846 at *29 (E.D.N.Y. June 16, 2014). As a result of this ruling, Verizon and LIPA issued licenses to the EEEA to attach lechis to the utility poles in Westhampton Beach, and the EEEA attached lechis to those utility poles. Accordingly, an eruv now exists in Westhampton Beach. *See* Letter to Court from Robert G. Sugarman, *East End Eruv Assoc. v. Vill. of Westhampton Beach*, No. 11-cv-213 (E.D.N.Y. July 31, 2014), ECF No. 268.

## SUMMARY OF ARGUMENT

The District Court's dismissal of JPOE's Complaint should be affirmed on several grounds.

*First*, as explained in the EEEA's brief, which argument is adopted by the Utilities, there has been no final judgment entered in the proceedings below because JPOE voluntarily dismissed its claims against Westhampton Beach without prejudice. As a result, the claims against one party (Westhampton Beach) were not finally resolved, and this Appeal is premature.

*Second*, JPOE and its members lack standing to assert their claims because they have failed to assert a concrete and direct injury from the Utilities' issuance of licenses to the EEEA for the attachment of lechis to the Utilities' poles, other than the alleged psychological harm and discomfort that they might experience as a result of the EEEA's and its members' personal practice of religion in the same village as them. This is not legally sufficient harm to constitute standing as required by well-established law.

*Third*, JPOE cannot state a claim under the Establishment Clause with regard to Verizon or the contract by which Verizon has agreed to permit the EEEA to attach lechis to Verizon's utility poles. Verizon and the EEEA are private organizations that are not subject to the Establishment Clause, and no other governmental entity has been asked to provide any assistance or affirmative action

14

for the contract between Verizon and the EEEA. To the contrary, the Municipalities have actively opposed the attachment of lechis to Verizon's poles. Accordingly, JPOE has failed to allege that Verizon is a "state" or "government" actor or is engaged in state action as required in order to state a claim under the Establishment Clause.

*Fourth*, even if the threshold "governmental action" requirement were met here, courts have consistently held that even an affirmative action by a governmental actor in support of an eruv constitutes a reasonable accommodation of religious practices and does not violate the Establishment Clause. The actions by the Utilities of which JPOE complains are reasonable accommodations to the EEEA and are not barred by the Establishment Clause.

*Fifth*, LIPA's contract with the EEEA implicates LIPA's personal property only; LIPA's utility poles are neither public spaces nor public property, but rather are LIPA's property to be used and operated as LIPA may determine. Moreover, LIPA's issuance of licenses for the attachment of lechis easily passes muster under the *Lemon* test, because LIPA's issuance of licenses to the EEEA has a secular purpose, i.e., it treats the EEEA evenhandedly with others; neither advances nor inhibits religion, because it merely affords the EEEA the same opportunity to use LIPA's poles as it affords other potential licensees; and it will not result in excessive entanglement of government and religion, because LIPA would not be

15

involved in maintaining the lechis on the poles.  Furthermore, if LIPA refused to allow the EEEA to attach lechis to LIPA's poles, LIPA would risk violating the Free Exercise Clause.

The Verizon Order and the LIPA Order should be affirmed.

## ARGUMENT

### I.    STANDARD OF REVIEW

In reviewing a district court's dismissal of a complaint for lack of subject matter jurisdiction under Rule 12(b)(1), this Court reviews factual findings for clear error and legal conclusions *de novo*.  *Kiobel v. Royal Dutch Petroleum*, 621 F.3d 111, 124 (2d Cir. 2010) (citations omitted).  On a motion to dismiss for lack of subject matter jurisdiction based on a lack of standing, the plaintiff "must allege facts that affirmatively and plausibly suggest that [he] has standing to sue." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011).  In its review, "the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it."  *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008), *aff'd*, 561 U.S. 247, 130 (2010) (internal citations omitted).

This Court reviews a district court's grant of a Rule 12(b)(6) motion to dismiss *de novo*. *Commack Self-Service Kosher Meats, Inc. v. Hooker*, 680 F.3d 194, 203 (2d Cir. 2012). The same standard of review applies to Rule 12(c) motions for judgment on the pleadings and Rule 12(b)(6) motions to dismiss. *Bank of N.Y. v. First Millennium, Inc*., 607 F.3d 905, 922 (2d Cir. 2010). The complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions," *id.*; indeed, "a plaintiff's pleading obligation still 'requires more than labels and conclusions, and a formulaic relation of the elements of a cause action will not do.'" *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

It is well-settled that the Court may affirm a district court's ruling on any grounds for which there is a sufficient record, including grounds not relied upon by the district court. *See, e.g.*, *M.F. v. N.Y. Executive Dep't Div. of Parole*, 640 F.3d 491, 494–95 (2d Cir. 2011) ("[I]t is a well-settled principle of law that this Court may affirm whenever the record is sufficient to permit its conclusions of law, regardless of whether our reasoning differs from that of the court below." (citations omitted)); *see also Holcomb v. Lykens*, 337 F.3d 217, 223 (2d Cir. 2003).

## II.     THE APPEAL SHOULD BE DISMISSED AS PREMATURELY FILED

JPOE filed its notice of appeal without first obtaining a final judgment from the District Court.  As explained in the EEEA's brief, which argument is adopted in full by the Utilities, more than one year after JPOE's claims were dismissed as to EEEA, Verizon and LIPA, JPOE entered into a stipulation with Westhampton Beach, dismissing JPOE's remaining claims against Westhampton Beach without prejudice.  Such a voluntary dismissal is not a final decision and is insufficient to confer appellate jurisdiction.  As a result, this Appeal should be dismissed as premature.

## III.    JPOE LACKS STANDING TO ASSERT ESTABLISHMENT CLAUSE CLAIMS AGAINST VERIZON AND LIPA.

The Court should affirm the Verizon Order and the LIPA Order because JPOE lacks standing to assert its claims against Verizon and LIPA.   Specifically, JPOE's allegations that its members will suffer psychological harms as a result of the attachment of lechis to the Utilities' poles are not sufficient to confer standing to assert claims under the Establishment Clause.  *See Valley Forge Christian Coll. v. Ams. United for the Separation of Church & State, Inc.*, 454 U.S. 464, 486 n. 22 (1982).

No case or controversy exists under Article III, and therefore jurisdiction is lacking, unless a plaintiff has standing to assert a claim.  *See, e.g.*, *Allen v. Wright*, 468 U.S. 737, 750–51 (1984).  The minimum constitutional requirements

for standing were explained in *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992):

> First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not "conjectural" or "hypothetical."' Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.' Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'

*Id.* at 560–61 (citations and footnote omitted).

In general, parties may establish standing to assert Establishment Clause claims in two ways: (1) taxpayers may have standing if a government's exercise of its taxing and spending power violates the Establishment Clause, *see Flast v. Cohen*, 392 U.S. 83, 102–03 (1968), or (2) other parties may have standing if they are "directly affected by the laws and practices against which their complaints are directed." *Valley Forge*, 454 U.S. at 486 n.22 (1982) (quoting *Abington Sch. Dist. v. Schempp*, 374 U.S. 203, 224 n.9 (1963)). By JPOE's own admission, taxpayer standing is not relevant here.[5] JPOE also lacks standing under well-established

---

[5] In this case, JPOE does not contend that it has met the requirements for standing as a taxpayer alleging that the government's exercise of its taxing and spending power violates the Establishment Clause. *See Flast v. Cohen*, 392 U.S. 83, 102–03 (1968); *Lamont v. Woods*, 948 F.2d 825, 829–30 (2d Cir. 1991). Nor could it. JPOE's Complaint does not and cannot point to any "extraction and spending of

19

Supreme Court precedent because JPOE has failed to point to any legally cognizable harm resulting from the attachment of lechis to the Utilities' poles.

In *Valley Forge*, the Supreme Court specifically ruled that plaintiffs cannot establish standing simply by claiming that the Constitution has been violated. *Id.* at 486. In that case, the Court held that plaintiffs had "fail[ed] to identify any personal injury suffered by them *as a consequence* of the alleged constitutional error, other than the psychological consequence presumably produced by observation of conduct with which one disagreed." *Id.* at 485 (emphasis in original). Mere psychological offense, according to the Supreme Court, "is not an injury sufficient to confer standing under Art. III, even though the disagreement is phrased in constitutional terms . . . . [S]tanding is not measured by the intensity of the litigant's interest or the fervor of his advocacy." *Id.* at 485–86.

The gist of JPOE's arguments is that JPOE does not attach religious significance to the existence of an artificial enclosure (made up of walls, natural boundaries, and lechis attached to utility poles), and that JPOE does not like the fact that others have different opinions. JPOE's argument is, at core, a statement

---

tax money in aid of religion." *Arizona Christian School Tuition Org. v. Winn*, 131 S. Ct. 1436, 1446 (2011). There is no taxpayer money being spent in connection with the Utilities' contracts with the EEEA, and JPOE thus lacks standing to raise any Establishment Clause challenge to those actions. *See, e.g.*, *Winn*, 131 S. Ct. at 1446.

of religious disagreement. In its Complaint, JPOE makes no allegation that Verizon, LIPA, or the EEEA has actually intruded on JPOE's own religious practices or restricted JPOE's own constitutionally protected freedoms in any way.

Here, the only form of purported injury that JPOE claims is the psychological angst that JPOE and its members would allegedly experience in the future due to knowing that there were lechis attached to Verizon and LIPA's utility poles. *See, e.g.*, Appellants' Br. at 2–3 ("JPOE's members oppose the establishment of an eruv on government property in their communities because of their sincerely held belief that an eruv is inherently, and by intention and design, a deeply sectarian religious ritual symbol that would communicate a government endorsement of a specific religious practice in which they do not believe or practice, and which some of JPOE's members find exclusionary and offensive."); *id.* ("For example, both Sheiffer and Lubliner are observant Jews who belong to Jewish denominations that, doctrinally, do not accept the concept of the eruv as a valid interpretation of Jewish law."); *id.* at 13 ("[Appellants] do not share in the religious beliefs and spiritual values embodied and expressed by the eruv. Moreover, many JPOE members are religious Jews themselves who affirmatively disagree with and reject such beliefs and practices on a personal, spiritual, and doctrinal level."); JPOE Compl. ¶ 35 (A-16–17) ("The interpretation of Jewish law which finds its physical expression and embodiment in the establishment of an

eruv is rejected and is in fact antithetical to the beliefs of many Jews, including Sheiffer, Lubliner and other members of JPOE, who view it as a kind of legalistic interpretation of Jewish law which is inconsistent with the true spiritual interpretation and observance of Judaism.").

The two Second Circuit cases on which JPOE relies – *Sullivan v. Syracuse Housing Authority*, 962 F.2d 1101 (2d Cir. 1992) and *Cooper v. United States Postal Service*, 577 F.3d 479 (2d Cir. 2009) – are readily distinguishable. In *Sullivan*, the Court found that the plaintiff had standing because plaintiff alleged, *inter alia*, the "deprivation of [his] entitlement to use and enjoy 'public housing facilities.'" *Sullivan*, 962 F.2d at 1108. Specifically, Sullivan was denied use of the public community center because the after-school program at issue was using the space at that time. *Id.* The court concluded Sullivan was "not a simple bystander using the courts to vindicate abstract value interests" noting that he lived in the public housing development where the alleged religious activities were conducted and his son attended the offending after-school program that operated in the public housing facilities. *Id.* at 1105. Here, JPOE has not alleged and cannot allege that they have been deprived of their "right to use and enjoy" any public facility. Nor have they alleged any tangible, non-psychological benefit to be obtained from the relief they request. *See id.*; *see also Sierra Club v. Morton*, 405 U.S. 727, 734–35 (1972) (finding lack of standing when "[t]he Sierra Club failed

to allege that it or its members would be affected in any of *their activities* or *pastimes*" by construction of the proposed ski resort (emphasis added)).

*Cooper* involved a Contract Postal Unit ("CPU") operated by a church-related organization, under U.S. Postal Service regulations and pursuant to a revenue-sharing contract with the U.S.P.S. *Cooper*, 577 F.3d at 484–85. In the CPU, the church organization displayed religious materials including a television monitor displaying church-related videos and pamphlets and fliers advertising a missionary organization, which included biblical passages and religious messages. *Id.* Cooper alleged "that he was made uncomfortable by direct contact with religious displays that were made a part of his experience using the postal facility nearest his home," *id.* at 491, and that when he registered a complaint he "was told that [he] could go somewhere else if [he didn't] like it." *Id.* at 488. The Court found these allegations sufficient to support standing. The differences between *Cooper* and this case are obvious. The lechis will be attached to Verizon and LIPA's property. JPOE does not "use" the Utilities' poles (as a citizen uses a government post office). Furthermore, the plaintiff in *Cooper* was actively confronted with religious messages conveyed by pamphlets, videos, and biblical passages. Here, the proposed lechis are just ordinary plastic strips that would be

attached to utility poles. It is the artificial enclosure (not the lechis themselves) that has significance to the EEEA and its members.[6]

JPOE's alleged harm is merely the type of psychological injury that the Supreme Court has held is insufficient to confer standing on a litigant. *See Valley Forge*, 454 U.S. at 486; *id.* at 473 ("The federal courts have abjured appeals to their authority which would convert the judicial process into 'no more than a vehicle for the vindication of the value interests of concerned bystanders.'" (citations omitted)); *see also Freedom from Religion Found., Inc. v. Obama*, 641 F.3d 803, 807–08 (7th Cir. 2011) ("offense at the behavior of the government, and a desire to have public officials comply with (plaintiffs' view of) the Constitution, differs from a legal injury."). As such, the District Court properly dismissed JPOE's Complaint, as JPOE is without standing to assert Establishment Clause claims against Verizon and LIPA.

---

[6] Despite finding Establishment Clause standing, the Court in *Cooper* did *not* require the postal unit to remove these religious displays entirely, but instead directed it to "create and install a barrier in front of the postal counter that is a visual cue and gives a sense of passage from one area of the space into another, thereby delineating space exclusively dedicated to the public function from space dedicated to other things." *Id.* at 497. Specifically, the Court determined that "Separation and visual cues will not keep the video from being seen and overheard by postal patrons, but the source will unambiguously emanate from a zone distinct from the post office functions. . . . Once the postal counter is cleared and visual cues installed, no more is required to cure the Establishment Clause violation." *Id.*

IV.  **THE DISTRICT COURT PROPERLY DISMISSED JPOE'S CLAIMS AGAINST VERIZON BECAUSE VERIZON IS NOT A GOVERNMENTAL ENTITY AND IS NOT SUBJECT TO THE ESTABLISHMENT CLAUSE.**

The Establishment Clause prevents the "active involvement of the sovereign in religious activity." *Walz v. Tax Comm'n*, 397 U.S. 664, 668 (1970); *see also Lemon v. Kurtzman*, 403 U.S. 602, 612 (1971) (noting that the Establishment Clause was intended to afford protection against "three main evils": sponsorship, financial support, and active involvement of the sovereign in religious activity). The Establishment Clause only applies to governmental action. *See, e.g.*, *Cooper*, 577 F.3d at 491 ("The Fourteenth Amendment, and, through it, the First Amendment[ ], do not apply to private parties unless those parties are engaged in activity deemed to be 'state action.'" (quotations omitted)); *see also Peck ex rel. Peck v. Baldwinsville Central Sch. Dist.*, 426 F.3d 617, 634 (2d Cir. 2005) (noting that the Establishment Clause protects against government actions); *Russell v. Town of Mamaroneck*, 440 F. Supp. 607, 612 (S.D.N.Y. 1977) (noting that the "Establishment Clause prohibits only governmental action").

Verizon is a private corporation, not a governmental entity.  JPOE Compl. ¶ 13 (A-12).  Furthermore, the Complaint contains no allegations of any governmental sponsorship or involvement in Verizon's agreement with the EEEA. Indeed, one of the Municipalities, Westhampton Beach, filed its own counterclaims

against Verizon in the *Verizon* Action below, seeking to enjoin the performance of Verizon's agreement with the EEEA.

JPOE itself conceded below that it lacks claims against Verizon in its initial pre-motion conference letter to the Court, noting that the claims against Verizon had been filed so that Verizon would be joined "as a required party."  *See* Letter to Hon. Leonard D. Wexler, U.S.D.J., from Jonathan Sinnreich, re: *Jewish People for the Betterment of Westhampton Beach, et al. v. The Village of Westhampton Beach, et al.*, 12 CV 3760 (E.D.N.Y. Sept. 4, 2012) (A-24.13).  JPOE failed to articulate any independent claims that it was asserting against Verizon.  Indeed, it could not.  The subject of JPOE's claims is a private contract between private parties, involving the use of Verizon's private property.  No Establishment Clause claim can be based on that contract.

Now, for the first time on appeal, JPOE appears to argue that the attachment of lechis to Verizon's telephone poles implicates governmental action merely because, according to JPOE, "the proposed eruv will be erected on public property, in public rights-of-way, on public utility poles, and circumscribing public spaces." Appellants' Br. at 8 n.3.  This theory was not presented in JPOE's Complaint and was not argued by JPOE to the District Court, and the argument therefore is waived and is not properly raised for the first time on appeal.  Furthermore, the utility poles are not public property, but rather the personal property of Verizon

26

and LIPA.  *See N.Y. Tel. Co. v. Town of North Hempstead*, 41 N.Y.2d 691, 699 (1977) ("The town concedes, as it must, that the utility poles themselves are personal property."); *see also See New York Tel. Co. v. North Hempstead*, 86 Misc. 2d 487 (N.Y. Sup. Ct. Nassau Co. 1975), *aff'd* 52 A.D.2d 934 (2d Dep't 1976), *modified on other grounds by* 41 N.Y.2d 691 (1977).  It is thus disingenuous and contrary to both fact and well-established law to call these poles "public property" or "public utility poles."[7]

Thus, the claims against Verizon were properly dismissed under Rule 12(b)(6).

### V. THE JPOE COMPLAINT WAS PROPERLY DISMISSED BECAUSE ERUVIN ARE REASONABLE ACCOMMODATIONS AND DO NOT VIOLATE THE ESTABLISHMENT CLAUSE.

Even assuming JPOE has standing to sue, and even assuming that the threshold "governmental action" requirement were met, the Complaint should be dismissed.  Courts have consistently held that even an affirmative action by a

---

[7] Indeed, the Supreme Court has rejected the imposition of public actor status upon utility companies simply by virtue of the nature of their business.  *See Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352–54 (1974) (rejecting broad principle under public function test that all businesses affected with the public interest are state actors); *id.* at 352–53 (utility's extensive state regulation and a state-awarded monopoly were insufficient to establish state action); *see also Taylor v. Consol. Edison Co. of N.Y., Inc.*, 552 F.2d 39, 44–46 (2d Cir. 1977) (concluding that complaint against utility that terminated customer's service failed to allege state action).

governmental actor in support of an eruv constitutes a reasonable accommodation of religious practices and does not violate the Establishment Clause.

The U.S. Supreme Court has explained that the Constitution does not "require complete separation of church and state; it *affirmatively mandates accommodation*, not merely tolerance, of all religions, and forbids hostility toward any." *Lynch v. Donnelly*, 465 U.S. 668, 673 (1984) (emphasis added); *see also Lemon*, 403 U.S. at 614 ("Some relationship between government and religious organizations is inevitable."); *Smith v. Cmty. Bd. No. 14*, 128 Misc. 2d 944, 946 (N.Y. Sup. Ct., Queens Cnty. 1985), *aff'd*, 133 A.D.2d 79 (2d Dep't 1987) ("[T]here are necessary relationships between government and religion; that government cannot be indifferent to religion in American life; and that, far from being hostile or even truly indifferent, it may, and sometimes must, accommodate its institutions and programs to the religious interests of the people." (quoting Laurence H. Tribe, American Constitutional Law § 14-4, at 822 (1978))).

Indeed, the Supreme Court has long recognized that the Establishment Clause is not an absolute bar to government involvement in religion and that, indeed, there exists "room for play in the joints" for government to accommodate religion. *Walz*, 397 U.S. at 669. As a result, the Supreme Court has held that the government may accommodate a religious practice without running afoul of the Establishment Clause so long as the accommodation does not "entangle the State

28

in an unlawful fostering of religion." *Hobbie v. Unemployment Appeals Comm'n of Fla.*, 480 U.S. 136, 144–45 (1987) (rejecting state's argument that it would violate the Establishment Clause by providing unemployment benefits to employee who was fired after refusing to work on Saturdays due to her religious beliefs).

Governmental action is not unconstitutional merely because it permits religious institutions to advance religion; rather, such action is unconstitutional only when the government itself advances religion through its own activities. *Corp. of Presiding Bishop of Church of Jesus Christ of Latter-day Saints v. Amos*, 483 U.S. 327, 334–35 (1987) (holding that religious exemption to Title VII's prohibition on religious discrimination is a reasonable accommodation that prevents government intrusion in religion rather than impermissibly fostering religion) (citing *Hobbie*, 480 U.S. at 144–45).

Cases involving the creation of eruvin have consistently held that government acquiescence—and even affirmative assistance—in the creation of an eruv is a valid accommodation of religious practice under the Free Exercise Clause, rather than a violation of the Establishment Clause. *See Tenafly Eruv Ass'n v. Borough of Tenafly*, 309 F.3d 144, 176 (3d Cir. 2002); *ACLU v. City of Long Branch*, 670 F. Supp. 1293, 1296 (D.N.J. 1987); *Smith*, 128 Misc. 2d at 946. In *Smith* and *Long Branch*, courts specifically rejected Establishment Clause challenges to municipally approved eruvin even though the municipality in each

29

case granted permission to the eruv planners to make alterations to *public property* in order to create the eruv. *See Long Branch*, 670 F. Supp. at 1294 (noting that the city passed a resolution "establishing the eruv and authorizing the Congregation to erect [two additional] poles and [a] fence extension on public property" in order to do so); *Smith*, 128 Misc. 2d at 947 ("[T]he court determines that the actions of the city agencies [which granted permission for plaintiffs to use city lamp poles and to increase the height of sea fences to create an eruv] did not establish religion but were a valid accommodation to religious practice.").

Here, the Utilities have taken no affirmative action to promote or advance any particular religion. Instead, they have neutrally accommodated the EEEA, allowing the EEEA to attach non-interfering objects to their utility poles. This does not make the action an unconstitutional establishment of religion. *See Amos*, 483 U.S. at 334–35; *see Commack*, 680 F.3d at 210 (holding that law requiring kosher foods to be labeled as such did not establish a religion because the state did not adopt or endorse one religion over another or encourage particular religious activities; the labeling requirement was neutral as to all companies that wished to hold their food out as kosher, regardless of whether it met religious requirements); *see also Good News Club v. Milford Central Sch.*, 533 U.S. 98, 113–14 (2001) (holding that neutrality of government programs is "a significant factor" in the Establishment Clause analysis and weighs in favor of rejecting the Establishment

Clause defense where religious after-school group merely sought to be treated the same as other groups (citation omitted)).[8]

Accordingly, the Complaint was properly dismissed for failure to state a claim against the Utilities, because eruvin do not violate the Establishment Clause and are instead reasonable accommodations under the Free Exercise Clause of the Constitution.

## VI.   JPOE'S ESTABLISHMENT CLAUSE CLAIM AGAINST LIPA WAS PROPERLY DISMISSED.

### A.   LIPA's Contract With The EEEA Implicates LIPA's Personal Property

JPOE's Complaint dismissed below (A-9) includes two counts purporting to concern LIPA uniquely.  Count IV repeats the prior allegations of the Complaint, adding only allegations of a justiciable actual controversy "as to whether the use of LIPA-operated utility poles for the purpose of establishing an eruv by permanently affixing lechis thereto constitutes [an Establishment Clause] violation" (¶63), and

---

[8] It also bears emphasis here that the attachment of the lechis is clearly more visually innocuous, and less consequential in symbolic or "establishment" terms, than many other government actions that the Supreme Court has held constitutional under the Establishment Clause.  *See Lynch*, 465 U.S. at 673 (upholding municipal policy that permitted city park display of Christmas decorations, including a nativity scene); *Good News Club*, 533 U.S. at 114 (holding neutral school district policy that permitted after-school religious group – along with other groups – to hold religious classes on school grounds would not violate Establishment Clause).  For the reasonable observer, the 5/8" half-round PVC strips to be placed on Verizon and LIPA's utility poles do not in and of themselves have any religious connotation.

that JPOE has no adequate remedy at law (¶64). (A-22). Upon those perfunctory allegations, JPOE demands a declaration that such use of "LIPA-operated" utility poles violates the Establishment Clause. Count V adds conclusory allegations that LIPA's actions violate and have violated JPOE's rights under the Establishment Clause (¶67), and that LIPA "was and is motivated by an intent to interfere with [JPOE's] civil rights" and was "aware" it was acting in violation of the Constitution and federal law (¶69), purportedly entitling plaintiffs to nominal damages and attorneys' fees pursuant to 42 U.S.C. § 1983. (A-22–23). There is, of course, no proffered support or explanation for JPOE's allegation of LIPA's animus towards JPOE.

When LIPA moved for judgment on the pleadings, it relied solely upon the arguments made by Verizon in support of Verizon's own successful motion to dismiss, except one, i.e., Verizon's non-state actor status (A-313). In opposition, JPOE did not argue against dismissal based on LIPA's status as a public authority but, instead, merely incorporated by reference the arguments set forth in their oppositions to Verizon and EEEA's motions to dismiss, *see* LIPA Order (A-315); *see also* JPOE's Mem. in Opp'n to LIPA's Motion to Dismiss, *Jewish People for the Betterment of Westhampton Beach v. Vill. of Westhampton Beach*, No. 12-cv-03760 (LDW) (AKT) (E.D.N.Y.), ECF No. 26-1. LIPA's motion was granted on the arguments presented. LIPA Order (A-315–16).

Perhaps mindful that "'an appellate court will not consider an issue raised for the first time on appeal,'" *Merck Eprova AG v. Gnosis S.p.A.*, 2014 U.S. App. LEXIS 14514 (2d Cir. July 29, 2014) (quoting *Greene v. United States*, 13 F.3d 577, 586 (2d Cir. 1994)), JPOE makes no substantial effort here to articulate any basis for sustaining discrete Establishment Clause claims against LIPA based on LIPA's status as a public authority. Apart from a handful of references to the fact that Defendant-Appellee "LIPA," *i.e.*, the Long Island Lighting Company, is a New York corporation wholly owned and operated by the Long Island Power Authority, which in turn is a New York public authority and a public subdivision of New York State,[9] and conclusory characterizations of LIPA's utility poles as "public," JPOE's arguments respecting LIPA are indistinguishable from those pertaining to privately owned Verizon, and are untenable for the same reasons applicable to Verizon. Were this Court to consider JPOE's make-weight allegations respecting the status of LIPA and its poles, those arguments should be found unavailing. Although LIPA is a public authority, its utility poles are not "public spaces" as JPOE suggests with no citation of authority. *See* Appellants' Br. at 34. Nor is an Establishment Clause violation made out by the conclusory

---

[9] Pursuant to Public Authorities Law § 1020-i, the Long Island Power Authority has the right to exercise and perform all or part of its powers and functions through a wholly owned subsidiary, such as Appellee "LIPA" (*i.e.*, Long Island Lighting Company).

characterization of LIPA's agreement with the EEEA as "hosting the permanent display of any *eruv* on public property" *Id.* at 37. LIPA's equipment is its own property.

The "LIPA Act," Public Authorities Law, Article 5, Title 1-A, that created the Long Island Power Authority provided the Authority with broad powers to deal with its (and its subsidiary's) property:

> **Pub. Auth. Law § 1020-f. General powers of the authority**
>
> Except as otherwise limited by this title, the authority shall have all of the powers necessary or convenient to carry out the purposes and provisions of this title, including without limiting the generality of the foregoing, the power:
> . . . .
>
> (d) To . . . own, hold, improve, employ, use and otherwise deal in and with, real or personal property whether tangible or intangible, or any interest therein, within the state;
>
> . . . .
>
> (f) To sell, convey, lease, exchange, transfer, abandon or otherwise dispose of, or mortgage, pledge or create a security interest in, all or any of its assets, properties or any interest therein, wherever situated;
>
> . . . .
>
> (h) To make and execute agreements, contracts and other instruments necessary or convenient in the exercise of the powers and functions of the authority under this title,

34

including contracts with any person, firm, corporation, municipality, state agency or other entity in accordance with the provisions of section one hundred three of the general municipal law, . . . ;

**Pub. Auth. Law § 1020-g. Powers to provide and maintain generating, transmission and resource recovery waste to energy facilities**

Without limiting the generality of the powers conferred upon the authority by section one thousand twenty-f of this title, the authority shall have the specific power:

. . . .

(c) . . . , to determine the location, type, size, construction, lease, purchase, ownership, acquisition, use and operation of any generating, transmission or other related facility, . . .

Thus, the State Legislature endowed LIPA with power to, among other things, deal with, use, lease, convey, contract with respect to, etc., its assets and properties of whatever nature, including specifically its transmission facilities or other related facilities. Indeed, the District Court recently reaffirmed LIPA's power, holding that Public Authorities Law § 1020-g(c) was statutory authority for LIPA's subject agreement with the EEEA involving lease or use of LIPA's utility poles, as such poles were transmission-related facilities contemplated by that statute. *See Verizon New York, Inc. v. Vill. of Westhampton Beach*, No. 11-cv-252, 2014 WL 2711846 at *29 (E.D.N.Y. June 16, 2014).

35

Accordingly, LIPA's public authority status notwithstanding, LIPA's utility poles are neither "public spaces" nor "public property" but, pursuant to statute, are LIPA's property to be used and operated as LIPA may determine. In this particular case, LIPA determined to enter into an agreement requested by an entity that wished to lease or use space on LIPA's poles, which LIPA has the statutory discretion to do. *Id.*

### B. LIPA's Issuance Of Licenses For The Attachment Of Lechis Passes The *Lemon* Test

Even if this Court were to apply the three-prong test enunciated in *Lemon v. Kurtzman*, 43 U.S. 602 (1971) (the "*Lemon* test"), no *Lemon* criterion is offended by LIPA's agreement to license miniscule space on some of its utility poles for the attachment of the EEEA's lechis.[10] The license agreement has a secular purpose, is consistent with LIPA's actions in allowing others to make attachments, and does nothing to advance or inhibit religion. Instead, by allowing the lechis to be installed in these circumstances, LIPA is acting neutrally and is providing a reasonable accommodation for a religious practice to thereby avoid running afoul of the Free Exercise Clause through unduly inhibiting the EEEA's members' religious practices.

---

[10] Application of the *Lemon* test would also require dismissal of JPOE's Complaint as to Verizon even if dismissal of the Complaint against Verizon were not required on the state actor grounds discussed above. Accordingly, Verizon adopts and joins in the *Lemon* test arguments discussed herein.

36

The Establishment Clause of the First Amendment, applied to the States and other public entities via the Fourteenth Amendment, states that "Congress shall make no law respecting an establishment of religion." U.S. Const. amend. I. The Supreme Court's decision in *Lemon* provides the guideposts for determining when government action complies with the Establishment Clause: a challenged government action (1) must have a secular legislative purpose; (2) must not have the primary effect of advancing or inhibiting religion; and (3) must not foster the government's excessive entanglement with religion. 403 U.S. 602, 612–13 (1971). JPOE's analysis relies principally on purported application of the "*Lemon* test."

The test "protects against three main evils: sponsorship, financial support, and active involvement of the sovereign in religious activity." *Id*. at 612 (internal quotation marks omitted). Courts often collapse the last two prongs into one inquiry, whether the government action "has the effect of advancing or inhibiting religion." *Commack Self-Service Kosher Meats, Inc. v. Hooker*, 680 F.3d 194, 205 (2d Cir. 2012) (citing *DeStafano v. Emergency Hous. Grp., Inc.*, 247 F.3d 397, 406 (2d Cir. 2001)); *see also Agostini v. Felton*, 521 U.S. 203 (1997). Here, LIPA's decision to allow lechis to be attached, in furtherance of LIPA's neutral practice of permitting groups to attach objects to its utility poles, has a purely secular purpose, neither advances nor inhibits religion, and does not foster excessive government entanglement with religion.

37

### 1. LIPA's Issuance Of A License To The EEEA Has A Secular Purpose – It Treats The EEEA Evenhandedly With Others

Under the *Lemon* test's first prong – whether the government action has a secular purpose – this Court typically accords deference to the proffered secular purpose so long as the reason is "genuine, not a sham, and not merely secondary to a religious objective." *Skoros v. City of New York*, 437 F.3d 1, 19-20 (2d Cir. 2006) (quoting *McCreary County v. ACLU*, 545 U.S. 844 (2005) (internal quotations omitted)); *accord Commack*, 680 F.3d at 206. Deference is warranted here because LIPA's purpose is genuine and is not secondary to any religious objective. LIPA has permitted objects to be attached to LIPA's poles so long as the objects attached do not interfere with LIPA's ability to effectively conduct its business or maintain the poles and provided LIPA is satisfied that that the attachment will conform to local law, pursuant to the license agreement's requirements. *See* July 27, 2010 License Agreement between EEEA and LIPA, Art. II, § 3, Art. IX, § 8, Verizon Compl. Ex. B, *Verizon New York, Inc. v. Vill. of Westhampton Beach*, No. 11-civ-252 (E.D.N.Y. filed Jan. 18, 2011), ECF No. 1. JPOE fails to acknowledge the context in which LIPA would issue licenses to the EEEA – that LIPA has in the past similarly allowed other objects to be installed on its poles, for example, banners placed on its and Verizon's poles in connection with Westhampton Beach's St. Patrick's Day parade (A-237).

Permitting a religious group to attach objects to LIPA's poles, when it already permits others to do the same, is therefore a permissible secular purpose. *See Incantalupo v. Lawrence Union Free Sch. Dist. No. 15*, 380 F. App'x 59, 61 (2d Cir. 2010) (holding that, as to a government tax plan that "affords [benefits] to taxpayers generally and without regard to religion, plaintiffs cannot plausibly allege that either the purpose or the primary effect of the plan is to establish religion"); *see also Good News Club*, 533 U.S. at 113–14 (2001) (where religious after-school club sought same treatment as other groups, "allowing the Club to speak on school grounds would ensure neutrality [and the Plaintiff] faces an uphill battle in arguing that the Establishment Clause compels it to exclude [the club]").

Here, JPOE argues essentially that the Establishment Clause demands that LIPA treat a religious group differently from others *because* the group is religious – the very argument rejected in *Good News Club*. To do so could well violate the EEEA members' Free Exercise rights, and the avoidance of a constitutional violation is a patently secular, not religious, action. LIPA's action thus passes the first prong of the *Lemon* test.

> **2.** **LIPA's Issuance Of A License To The EEEA Neither Advances Nor Inhibits Religion Because It Merely Affords A Religious Group The Same Opportunity To Use LIPA's Utility Poles As Others**

The second prong of the *Lemon* test – that the governmental action must not have the primary effect of advancing or inhibiting religion – includes an assessment of whether a reasonable observer would perceive the challenged action as "endorsement." *Skoros*, 437 F.3d at 29. The reasonable observer is "a personification of a community ideal of reasonable behavior." *Id.* at 30 (quoting *Capitol Square Review & Advisory Bd. v. Pinette*, 515 U.S. 753, 780 (1995)). The inquiry is whether a reasonable observer – who is aware of "the history and context of the community and forum" – would perceive the action as endorsement of religion. *Id.* The inquiry is not whether any person, or even some people in the community, would perceive the action as endorsement. *Id.* The reasonable person standard is also a legal standard and can be determined by "judicial interpretation of social facts." *See Lynch v. Donnelly*, 465 U.S. 668, 694 (1984) (O'Connor, J. concurring).

In *Good News Club*, the Court rejected a public school district's Establishment Clause concerns as grounds for denying religious after-school club the right to speak on school grounds; the Court quoted from Justice O'Connor's concurrence in *Capitol Square*: "Because our concern is with the political community writ large, the endorsement inquiry is *not about the perceptions of*

40

*particular individuals* or saving isolated nonadherents from . . . discomfort . . . . It is for this reason that the reasonable observer in the endorsement inquiry must be deemed aware of the history and context of the community and forum in which the religious [speech takes place]." 533 U.S. at 119 (quoting *Capitol Square*, 515 U.S. at 779–80).

Applying that objective approach, it cannot seriously be suggested that an aware but untutored "reasonable observer" who happens to glance at a LIPA utility pole to which a 5/8" half-round strip of PVC is affixed would draw the conclusion from the presence of that plastic strip that the State of New York public utility charged with supplying electric power to Nassau, Suffolk, and part of Queens Counties had taken it upon itself to endorse and thereby advance a particular type of Orthodox Judaism in preference to other faiths. What possible interest could a public electric utility have in doing so? JPOE offers no suggestion and none may be imagined. No objective reasonable observer could draw such an irrational inference.

Indeed, before our reasonable observer could even contemplate the purpose of any of the pole attachments in question and whether it might warrant Establishment Clause analysis due to LIPA's alleged "state actor" status, he or she would need first to recognize that the particular pole being observed belonged to LIPA and not Verizon or another private utility. The Court may appropriately take

41

notice that the identity of the utility that owns any particular utility pole is not generally discernible to a passerby's untrained eye unaided by a utility pole map, and that pole maps are scarcely common commodities.

Assuming, *arguendo*, that the pole captivating our reasonable observer's attention could somehow be properly identified as one of LIPA's, the observer would next need to recognize that LIPA, unlike Verizon, is a public authority. While LIPA certainly makes no secret of its public status, there can be little doubt that the fact is not widely appreciated by customers who commonly think of it as "the electric company."

Assuming then that our attentive observer discerns both that the pole belongs to LIPA and that LIPA is a public authority, the nature of the 5/8" half-round strip of PVC would have to be identified as would its function in creating an eruv. Again, the Court may properly take notice that the significance of the eruv created by, among other things, these thin plastic strips, is not a matter of common knowledge in the American or New York or even Long Island community, at least where local opposition has yet to make the installation of an eruv a *cause célèbre.* Indeed, as the submissions made by JPOE and the EEEA upon this record show, there is lack of agreement as to that significance even among those who have focused most intensely on the question -- which the proverbial "reasonable observer" would, by definition, not have done. Moreover, the Court may take

42

notice that the plastic strips in and of themselves lack any religious or other significance. Indeed, JPOE's Complaint is devoid of any allegation that a lechi, by itself, has any significance.

In short, the odds that a member of the "political community writ large", unaffiliated with a specially interested pro-eruv or anti-eruv group, would possess the knowledge base required even to formulate the question posed by *Lemon*'s second prong are vanishingly small. Only an observer conscious of, at a minimum, the above rather arcane facts would even be in a position to formulate the beginnings of a question respecting whether some religious viewpoint was being advanced; such observer then would be confronted immediately with the utter implausibility that a public electric power utility would undertake to "endorse" Orthodox Judaism – or any religion for that matter.

A reasonable person who makes even a close inspection of the poles would merely see thin strips attached to the utility poles, alongside other objects the pole supports. Many will not even be aware that the EEEA attached the strips in order to establish its eruv. And even the reasonable observer aware of this fact would conclude only that LIPA has neutrally permitted non-descript objects to be attached – none of them enjoying any privileged "endorsed" status.

JPOE acts as if the "reasonable person" would not also recognize that LIPA is simply acting in accordance with a neutral practice generally applied to others,

and thereby refusing to treat the EEEA differently. Even the reasonable and well-informed observer who recognized the lechis as lechis, and who knew the EEEA installed them in furtherance of its eruv, would – as a well-informed observer – also understand that LIPA permits others to attach objects to its poles. Such a reasonable well-informed observer thus could not perceive LIPA's action as endorsement of a particular religious practice or reflecting any judgment that the EEEA's members have the "correct" or "preferred" set of religious beliefs. *Tenafly Eruv Ass'n v. Borough of Tenafly*, 309 F.3d 144, 176 (3d Cir. 2002) (noting that the reasonable, informed observer "would also know that the Borough was allowing them to remain on the utility poles only because its selective application of [an ordinance prohibiting the attachment of objects would be] a free exercise violation"); *see also, Commack Self-Service*, 680 F.3d at 210 (holding that neutral labeling requirement for kosher foods could not be perceived as endorsing one religion or religious group over another and could not be perceived as endorsement of religion because the labeling requirement was neutral as to all companies that wished to hold their food out as kosher, regardless of whether it met religious requirements).

44

3.    **LIPA's Issuance Of A License To The EEEA Would Not Foster Excessive Entanglement With Religion Because LIPA Would Merely Issue The License And Ensure The EEEA Adhered To Its Terms**

Finally, LIPA's issuance of a license allowing the EEEA to attach lechis to LIPA's utility poles would not foster excessive entanglement with religion because LIPA would simply issue the license and permit the EEEA to attach the lechis itself. This Court has held that "[t]he factors relevant to determining excessive entanglement are 'similar' to the factors used to determine effect [*Lemon*'s second prong]." *Skoros*, 437 F.3d at 36 (citing *Agostini*, 521 U.S. at 232). To determine whether government action fosters excessive entanglement, the Court should consider (1) the institutions that are benefitted, (2) the nature of the aid, and (3) the resulting relationship between the government and religion, such as whether government would monitor religious practices or cede government authority to a religious group. *Id*. at 36–37. Applying these factors, LIPA's issuance of a license to the EEEA would not foster excessive entanglement with religion. First, LIPA would provide no aid or benefit to the EEEA, as the EEEA is actually responsible for installing the lechis. *See* July 27, 2010 License Agreement between EEEA and LIPA, Art. IX, § 8, Art. V, § 1, Verizon Compl. Ex. B, *Verizon New York, Inc. v. Vill. of Westhampton Beach*, No. 11-civ-252 (E.D.N.Y. filed Jan. 18, 2011), ECF No. 1. As in *Smith*, "[t]he construction of the eruv [will be] financed totally by

private funds with no financial assistance by the city and the eruv will be maintained in the future totally by private funds."  128 Misc. 2d at 948.

Second, after licenses are issued, LIPA will not become embroiled in or involved with monitoring any religious practice.  LIPA will only ensure that the attached lechis adhere to the license requirements.  *See id* at Art. IV, § 1(g) ("The Licensor may inspect each of the Licensee's attachments after its installation, after any modification, periodically or when conditions warrant").  Nor does any of this involve LIPA ceding its governmental authority to the EEEA.  JPOE has failed to point to any such cession of governmental authority, and, indeed, the EEEA's maintenance of its own attachments to LIPA's poles implicates no exercise of governmental authority.  Therefore, LIPA's issuance of licenses to the EEEA does not foster excessive entanglement with religion and is constitutional under the Establishment Clause.[11]

---

[11] Moreover, even if merely granting the EEEA access to LIPA's poles constitutes a "benefit," such a benefit would not offend the Establishment Clause because it would ensure neutrality by treating the EEEA the same as other applicants. *Tenafly*, 309 F.3d at 177.  In addition, the EEEA is responsible for paying an annual fee to LIPA of $5.00 per pole.  *See* July 27, 2010 License Agreement between EEEA and LIPA, Ex. D, Verizon Compl. Ex. B, *Verizon New York, Inc. v. Vill. of Westhampton Beach*, No. 11-civ-252 (E.D.N.Y. filed Jan. 18, 2011), ECF No. 1.

###### C. If LIPA Refused To Allow The EEEA To Attach Lechis To LIPA's Poles, LIPA Would Risk Violating The Free Exercise Clause

As discussed earlier, eruvin are reasonable accommodations under the First Amendment's Free Exercise Clause. LIPA has a reasoned belief that it could have violated the First Amendment if it had denied the EEEA's application for a license to attach lechis to LIPA's utility poles. LIPA permits other, non-religious groups to make attachments to it poles, including without limitation Westhampton Beach St. Patrick's Day banners (A-237). If it denied the EEEA's application for a license based solely on the EEEA's purposes or solely on the perceived religions nature of the lechis, LIPA would have risked running afoul of the Free Exercise Clause. *See Church of the Lukimi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 546–47 (1993) (holding city ordinance unconstitutional where ordinance prohibited animal slaughter but was selectively applied against a religious sect and was not applied against those who slaughtered animals for food); *Tenafly*, 309 F.3d at 168.

*Tenafly* is quite instructive here. There, the Third Circuit, in the context of assessing a preliminary injunction, held that the Borough of Tenafly violated the Free Exercise Clause because it selectively enforced an ordinance that prohibited attaching objects to utility poles when it ordered that lechis be removed. 309 F.3d at 176. The Borough had permitted residents to affix a number of objects without removing them, including objects like house numbers and lost animal signs, as

well as religious objects like holiday decorations. *Id*. By choosing to enforce its ordinance only against those residents who attached lechis to the poles, the Borough failed to observe the Free Exercise Clause's mandate of neutrality towards religion. *Id*. at 168, 178. The court granted the Tenafly Eruv Association a preliminary injunction barring the Borough from removing the lechis from the utility poles. *Id*. at 178–79. Similarly, if LIPA had here refused to grant licenses allowing the lechis to be attached, it would risk violating the Free Exercise Clause. The avoidance of such a risk is a secular, not religious, purpose justifying its subject agreement with the EEEA.

## CONCLUSION

For the foregoing reasons, the Appeal should be dismissed for lack of a final judgment, but if the Appeal is considered on the merits, this Court should affirm the Verizon Order and the LIPA Order entered by the District Court in all respects.

Dated:      New York, New York
              August 6, 2014

By:  /s/Erica S. Weisgerber     

Erica S. Weisgerber
Michael E. Wiles
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
Telephone: (212) 909-6000
Facsimile: (212) 909-6836

*Attorneys for Verizon New York, Inc.*

By:  /s/ Zachary Murdock     

Zachary Murdock
David Lazer
LAZER APTHEKER ROSELLA &
YEDID PC
225 Old Country Road
Melville, New York 11747
Telephone: (631) 761-0800
Facsimile: (631) 761-0723

*Attorneys for Long Island Lighting
Company d/b/a LIPA*

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of August, 2014, I caused this Brief of Appellees to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

> Jonathan Sinnreich
> Timothy F. Hill
> Sinnereich Kosakoff & Messina LLP
> 267 Carleton Avenue, Suite 301
> Central Islip, New York 11722
>
> *Counsel for Appellants*

I further certify that on this 6th of August, 2014, I caused the required number of bound copies of the Brief of Appellees to be filed with the Clerk of the Court via UPS Next Day Air.

 /s/ Erica S. Weisgerber

Erica S. Weisgerber
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
eweisgerber@debevoise.com
Telephone: (212) 909-6000
Facsimile: (212) 909-6836
*Attorneys for Verizon New York, Inc.*

**CERTIFICATE OF COMPLIANCE WITH RULE 32(A) CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS**

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains [11,324] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Times New Roman in 14 pt. font.

Dated:       August 6, 2014
             New York, NY

                              /s/ Erica S. Weisgerber

                              Erica S. Weisgerber
                              DEBEVOISE & PLIMPTON LLP
                              919 Third Avenue
                              New York, New York 10022
                              eweisgerber@debevoise.com
                              Telephone: (212) 909-6000
                              Facsimile: (212) 909-6836
                              *Attorneys for Verizon New York, Inc.*